IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DYKE EDWARD NELSON,

    Plaintiff,                        No. 2:10-cv-2156 MCE JFM P

    vs.

DR. ALEX ZIGA,

    Defendant.                     FINDINGS & RECOMMENDATIONS

_____/

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's fifth amended complaint, filed May 25, 2011. Therein, plaintiff claims that defendant Dr. Alex Ziga violated plaintiff's rights under the Eighth Amendment by prescribing medications to plaintiff without discontinuing other medications that were "lethal" when combined. Fifth Amended Complaint, filed May 25, 2011, at 3. This matter is before the court on defendant's motion for summary judgment and plaintiff's motion for leave to amend the complaint.

I. Defendant's Motion for Summary Judgment

    A. Standards for a Motion for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,
2  1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
6  versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary
7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
8  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
9  committee's note on 1963 amendments).

10        In resolving the summary judgment motion, the court examines the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See</u> <u>Anderson</u>,
13  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
14  court must be drawn in favor of the opposing party. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.
15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
16  produce a factual predicate from which the inference may be drawn. <u>See</u> <u>Richards v. Nielsen</u>
17  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.
18  1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19  show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

22        On July 31, 2012 the court advised plaintiff of the requirements for opposing a
23  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Woods v. Carey</u>, 684
24  /////
25  /////
26  /////

3

1 F.3d 934 (9th Cir. 2012); see also Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),

2 cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).[1]

3   B.  Facts

4   Except as specifically noted, the following facts are undisputed.  At all times

5 relevant to this action plaintiff was an inmate in the California Department of Corrections and

6 Rehabilitation (CDCR) housed at California Medical Facility (CMF) in Vacaville, California.

7 Defendant Dr. Alex Ziga was a staff psychiatrist at CMF.

8   Defendant Ziga first saw plaintiff on November 6, 2009.  Prior to this visit,

9 plaintiff had been diagnosed with a major depressive disorder, severe with psychotic features.

10 Defendant Ziga saw plaintiff to renew his medications.  Plaintiff reported that an anti psychotic

11 medication he was taking, Paliperidone, was not working.  Defendant Ziga increased the dose of

12 Paliperidone to 9 mg and renewed three other psychiatric medications.  Defendant Ziga noted

13 that plaintiff was taking other medications prescribed by medical doctors but was not "overly

14 concerned with drug interaction as [plaintiff] did not report any negative symptoms, such as

15 losing consciousness or blacking out." Declaration of Dr. Alex Ziga in Support of Motion for

16 Summary Judgment, filed May 11, 2012 (Ziga Decl.), at ¶ 5.

17   Defendant Ziga saw plaintiff one week later "to monitor his response to the

18 increased dosage of Paliperidone."  Id. at ¶ 6.  Plaintiff reported that "his symptoms decreased in

19 intensity but not frequency, and that he noticed kicking and restlessness of his legs."  Id.

20 Defendant Ziga prescribed Cogentin to treat this.  Id.  Plaintiff signed a consent form for the

21 Cogentin.  Id.  Plaintiff avers that he was not given an opportunity to read the form but was

---

[1] Plaintiff was initially informed of the requirements for opposing a motion for summary judgment in an order filed July 19, 2011.  Defendant's motion for summary judgment was filed on May 11, 2012 and plaintiff's opposition thereto was filed on June 11, 2012.  Plaintiff filed another opposition on July 30, 2012.  Following the July 6, 2012 decision in Woods, on July 31, 2012 this court issued an order again advising plaintiff of the requirements for opposing a motion for summary judgment and granting plaintiff thirty days in which to file a supplemental opposition to defendant's motion.  On August 27, 2012, plaintiff filed a declaration in opposition to the motion.  All documents filed by plaintiff have been considered by the court.

1  "merely asked to sign the form and trust Dr. Ziga's words regarding medications prescribed."
2  Memorandum of Points and Authorities in Support of Plaintiff's Objections to Defendant's
3  Motion for Summary Judgment, filed July 30, 2012, at 2.[2]
4     Defendant Ziga next saw plaintiff on December 18, 2009 to go over his
5  medications. Plaintiff "reported improvement with the restlessness of his legs, though he was
6  still having certain symptoms." Ziga Decl. at ¶ 7. Defendant Ziga increased the Paliperidone to
7  12 mg. and "instructed [plaintiff] to contact staff should he have any abnormal reactions or side
8  effects to the increased dosage." Id.
9     Defendant Ziga next saw plaintiff on January 8, 2010 at plaintiff's request.
10 Plaintiff "reported legs shaking and cramping and that he could not hold a cup due to shaking
11 hands." Id. at ¶ 8. Defendant Ziga viewed these symptoms as "normal side effects due to the
12 increased dosage of Paliperidone" and he increased plaintiff's Cogentin. Id.
13     On January 20, 2010, plaintiff saw another staff psychiatrist for "medication
14 related problems. [He] complained that ever since the Paliperidone was increased to 12 mg he
15 was having spasms, was dropping objects, and had deep pain to his bone. [He] reported he had
16 stopped taking the meds five days earlier and symptoms got worse." Id. at ¶ 9. The staff
17 psychiatrist "explained stopping the medicine abruptly would cause discomfort and reassured
18 [plaintiff] that a lower dose may be better." Id. The staff psychiatrist prescribed Paliperidone 9
19 mg.
20     On February 5, 2010, plaintiff saw defendant Ziga for medication renewal.
21 Defendant Ziga renewed plaintiff's psychiatric medications. Defendant Ziga next saw plaintiff
22 on February 19, 2010, at plaintiff's request. Plaintiff reported that he had blacked out on
23 February 9, 2010. The parties dispute the extend of plaintiff's injuries from the fall. Plaintiff
24 "reported he had stopped taking the Paliperidone and had relapse of symptoms." Id. at ¶ 11.
25
26     [2] Plaintiff has verified the contentions in this document under penalty of perjury. Id. at 7.

1  Defendant Ziga restarted the Paliperidone at a lower dose of 3 mg.  Defendant Ziga did not see
2  plaintiff again before defendant Ziga went on medical leave in March 2010.  Plaintiff contends
3  that at a visit with defendant Ziga after the fall, in late February or early March, defendant Ziga
4  sat with a medication sheet in front of him, "he began to write down medications side to side and
5  then he began drawing lines from one medication to another, and to another, until he finally
6  looked up at the Plaintiff and explained:  Someone has made a serious mistake, you are not
7  supposed to be taking these medications at the same time."  Declaration of Dyke Edward Nelson
8  in Support of Opposition to Motion for Summary Judgment, filed August 27, 2012 (Nelson
9  Decl.), at 5.  Defendant Ziga denies these contentions.  Ziga Decl. at  ¶¶ 12, 17.

   C. Legal Standards

11          Plaintiff's Eighth Amendment claim has two elements:  proof that plaintiff had a
12 "serious medical need" and that defendants acted with "deliberate indifference" to that need.
13 Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if "the failure to treat a
14 prisoner's condition could result in further significant injury or the 'unnecessary and wanton
15 infliction of pain'."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle,
16 429 U.S. at 104, 97 S.Ct. 285).  Deliberate indifference is proved by evidence that a prison
17 official "knows of and disregards an excessive risk to inmate health or safety; the official must
18 both be aware of the facts from which the inference could be drawn that a substantial risk of
19 serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 825, 837
20 (1994).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when
21 they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d
22 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

23          Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos,
24 152 F.3d 1124, 1128 (9th Cir. 1998).  In addition, "[a] difference of opinion between a physician
25 and the prisoner – or between medical professionals – concerning what medical care is
26 /////

appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

   D.  Defendant's Motion

Defendant seeks summary judgment on the grounds that there is no evidence that he acted with deliberate indifference to plaintiff's serious medical need. In support of his motion, defendant notes that he saw plaintiff six times during the relevant period, that at no time prior to the last visit did plaintiff tell defendant Ziga he was blacking out or losing consciousness, and plaintiff did not report that to the other psychiatrist he saw on January 20, 2010 either. Defendant Ziga also notes that plaintiff stopped taking one of his prescribed medications two weeks before he fell without getting a physician's permission to stop the medication.

In opposition to the motion, plaintiff contends that defendant Ziga's representation that he was not "overly concerned" with drug interactions is proof of deliberate indifference because plaintiff did complain to him about negative side effects. Plaintiff also contends that although he signed informed consent forms he was not permitted to read the forms before he signed them and was so sedated that he could not have understood what he was reading even if he had been permitted to read the forms. Plaintiff also contends, as noted above, that defendant Ziga did go over the medication sheet after plaintiff fell and informed plaintiff that someone had made a mistake in the mixture of prescribed medications.

Even viewed in the light most favorable to plaintiff, there is insufficient evidence of deliberate indifference to require a trial on plaintiff's Eighth Amendment claim. The undisputed evidence shows that plaintiff was taking numerous medications, some for his longstanding psychiatric illness. Following plaintiff's report that one of the antipsychotic medications was improving the intensity, but not lessening the frequency, of his symptoms, defendant Ziga increased the dosage of that medication. Thereafter, when plaintiff reported kicking and restless legs, defendant Ziga prescribed Cogentin to treat that side effect. Subsequently, defendant Ziga increased the dosage of Cogentin in response to plaintiff's report

that his legs were "shaking and cramping and that he could not hold a cup due to shaking hands" because these symptoms were known side effects of increasing the dosage of the antipsychotic medications.  After plaintiff's fall, defendant Ziga decreased the dosage of the antipsychotic medication, which plaintiff had stopped altogether without permission from any psychiatrist, from 9 mg to 3 mg.  The undisputed evidence shows that defendant Ziga was attempting to treat plaintiff's psychiatric symptoms, and that he esponded to and attempted to treat plaintiff's complaints of side effects from the antipsychotic medication.  There is no evidence that in so doing he acted with deliberate indifference to plaintiff's need for appropriate treatment or medication management.

As noted above, the parties dispute whether, following plaintiff's fall, defendant Ziga carefully went over plaintiff's medications and told him that someone had made a mistake and he should not be taking all of the medications he was on.  This dispute is not material.  Even if it were true, it would at most be evidence of negligence which, as noted above, does not violate the Eighth Amendment.

For all of the foregoing reasons, this court finds that defendant Ziga is entitled to summary judgment.

II.  <u>Plaintiff's Motion to Amend</u>

Plaintiff seeks leave to amend his complaint to add as defendants two psychiatrists who were involved in reviewing plaintiff's administrative grievance, filed after his fall, concerning the combination of medications he was taking.  Plaintiff contends that these psychiatrists recommended reducing one of his medications but that the medication was not reduced for six months.  Defendant opposes the motion to amend on the ground that plaintiff delayed seeking amendment for over two years after the facts underlying the proposed amendment were made known to him, he amended his complaint several times without adding these defendants, and amendment would be futile because the facts do not suggest that either

/////

proposed new defendant acted with deliberate indifference.  Defendant also contends that the statute of limitations has expired on plaintiff's proposed claims against these two defendants.

Pursuant to this court's scheduling order filed October 11, 2011, pretrial motions were to be filed on or before April 20, 2012.  See Discovery and Scheduling Order, filed October 11, 2011, at 6.  At defendant's request, the deadline for filing dispositive motions was extended to May 11, 2012.  See Order filed April 30, 2012.  Plaintiff did not file his motion to amend until late November 2012, well after expiration of the deadline.  Plaintiff has not shown good cause for his failure to timely file a motion to amend.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir.1992) ("good cause" standard of Fed. R. Civ. P. 16, rather than more liberal standards of Fed. R. Civ. P. 15).  Moreover, the documents filed by plaintiff with his motion to amend are insufficient to support a claim that either of the proposed two new defendants acted with deliberate indifference to plaintiff's serious medical need for appopriate medication management.  Plaintiff's motion to amend should therefore be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant's May 11, 2012 motion for summary judgment be granted; and

2. Plaintiff's November 27, 2012 motion to amend be denied;

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

/////
/////
/////
/////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

12
nels2156.57